# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ARNOLD DIAZ

Plaintiff,

vs.                                                          Civil No. 00-1418 WJ/LAM ACE

CITY OF HOBBS, TONY KNOTT,
MATT RHOADES, D. PATTERSON
and JEFF WORTH,

Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING PARTIAL SUMMARY JUDGMENT
## IN FAVOR OF DEFENDANT JEFF WORTH

THIS MATTER comes before the Court upon Defendant Jeff Worth's Partial Summary

Judgment on Counts II and III of the Complaint, filed May 10, 2004 (**Doc. 108**). The complaint

asserts violations of civil rights brought under 42 U.S.C. § 1983, and various state tort law claims.

Having considered the parties' briefs and the applicable law, I find that Defendant's motion is

well-taken and will be granted.

### Background

This lawsuit arises from incidents which occurred on October 16, 1998, when Plaintiff's

six-year old nephew was struck by a vehicle and was taken to the hospital for emergency

treatment. The child subsequently died as a result of the accident. While in the emergency room,

Cynthia and Rudy Salazar, the child's parents, became hysterical. Cynthia Salazar is Plaintiff's

sister. Officer Mark Herrera was at the hospital at the time, and asked Plaintiff, who was also

present, to help get the child's father in control and escort him out of the lobby.  The father was eventually put in a patrol car and Officer Herrera left the hospital.  Plaintiff alleges that while he remained behind in the hospital, Defendants Rhoades, Patterson and Worth "assaulted, maced, handcuffed, bruised [and] scraped" him, then arrested and charged him with criminal acts including assault and battery on a police officer.  The complaint states that one year after the incident, Plaintiff pled to one count of assault and was sentenced to one year of probation.

Defendant's account adds more detail to the narrative.[1]  On October 16, 1998, Arnold Diaz was at the home of his brother, Bert Diaz, where he was drinking heavily and smoking marijuana.  Also present were Plaintiff's sister and brother-in-law, Cynthia and Rudy Salazar, who were also drinking and had become intoxicated.  At some point during the time Cynthia and Rudy left the house to purchase more alcohol, their son was run over by a Mr. Henry Garcia, who also had been drinking.  After the Salazars returned to the house, they transported their son to the emergency room at Lea Regional Hospital.  When Officer Herrera arrived at the hospital, he found the Salazars out of control and uncooperative, and Rudy Salazar was striking his wife and hospital personnel.  He called upon other officers and family members, who had arrived at the hospital, to assist him in getting control of Rudy Salazar.  At some point, when Officer Herrera was also trying to restrain Cynthia Salazar, Rudy Salazar physically attacked the officer.  On seeing this, Arnold Diaz, the Plaintiff, physically attacked Officer Herrera.  Two officers who witnessed this attack grabbed Plaintiff, pulled him off of Officer Herrera and arrested him.  Plaintiff was placed in Defendant Jeff Worth's patrol car, and Officers Worth and Rhoades

---

[1]  "Defendant" refers to Defendant Worth, who filed this motion.

transported Plaintiff to City Jail.[2]

In addition to a deprivation of his constitutional rights, Plaintiff alleges that he suffered damage to his reputation; lost work time and expenses incurred in defense of the "spurious" criminal charges; and suffered emotional distress, including "lack of confidence and trust in law enforcement."  Pretrial Order, Plaintiff's Contentions, Doc. 64 at 5.   The complaint asserts violations of the Fourth Amendment (Unreasonable Seizure) and Fourteenth Amendment (Substantive Due Process and Equal Protection), and includes claims of supervisory liability against Chief of Police Tony Knott; municipal liability against the City of Hobbs; and state law claims of battery and negligence.  This motion addresses only the Fourteenth Amendment claims of substantive due process and equal protection (Counts II and III, respectively) with regard to Defendant Worth, although the complaint alleges violations of the Fourteenth Amendment against the other Defendants as well.

## Discussion

*Legal Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Jones et al v. Kodak Med'l Assistance Plan, 169 F.3d 1287, 1291 (10th Cir. Utah)

---

[2]  Although not necessarily relevant to the merits of the claims presented in the complaint, Defendant notes that a day after the incident, the grieving Salazar family was visited by Carl Mackey, a long time police antagonist and Keith Elston, an ACLU lawyer, who took video taped statements from the family members who participated in the fracas at the hospital.  According to Defendant, the present lawsuit was filed upon the instigation of those two individuals. Pretrial Order, Defendant's Contentions, Doc. 64 at 8.

(citing Fed.R.Civ.P. 56(c)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

When applying a summary judgment standard, the Court must construe the factual record in the

light most favorable to the party opposing summary judgment.  Butler v. City of Prairie City,

Kan.,172 F.3d 736, 744 (10th Cir. 1999).

I.      Fourteenth Amendment - Substantive Due Process

        Defendant argues that Plaintiff does not have a viable Fourteenth Amendment claim for

excessive force against Worth because the claim must be analyzed under the Fourth Amendment.

The United States Supreme Court has held that where a particular amendment "provides an

explicit textual source of Constitutional protection" against a particular sort of government

behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must

be the guide for analyzing these claims."  Albright v. Oliver, 510 U.S. 266 (1994) (quoting

Graham v. Connor, 490 U.S. 386, 394- 395 (1989)); accord, Riddle v. Mondragon, 83 F.3d 1197

(10th Cir.1996).  The Fourth Amendment bars the use of excessive force from arrest to the

determination that the arrest was based on probable cause.  Graham, 490 U.S. at 395 (1989)

(claim that a law enforcement officer used excessive force in the arrest or other seizure of a

citizen should be analyzed under the Fourth Amendment and its reasonableness standard, rather

than under a substantive due process approach); Barrie v. Grand County, Utah, 119 F.3d 862,

866 (10th Cir. 1997).  After an adjudication of guilt, the Eighth Amendment governs such claims.

Whitley v. Albers, 475 U.S. 312, 318-326 (1986) (claim of excessive force to subdue convicted

prisoner analyzed under an Eighth Amendment standard).[3]

_____

        [3]  Plaintiff has also alleged a Fourth Amendment claim in Count I alleging unreasonable
search, and assault and battery (the latter of which can be construed as an excessive force claim).
Plaintiff wisely does not argue that his unreasonable seizure claim should also be considered under

Plaintiff insists that his excessive force claim need not be addressed exclusively under the Fourth Amendment.  This would indeed be true-- *if* his claim included conduct that fell outside the context of an arrest or seizure.  See Latta v. Keryte, 118 F.3d 693, 702 (10th Cir. 1997) (assuming that excessive force claims arising outside the context of a seizure still may be analyzed under substantive due process principles) (citing Bella v. Chamberlain, 24 F.3d 1251, 1257 (10th Cir. 1994)).[4]  Otherwise, there is no legal basis for Plaintiff's substantive due process claim.  A "seizure" occurs only when a citizen is physically touched by law enforcement officers or when he otherwise submits to a show of authority by the officers. California v. Hodari D., 499 U.S. 621, 626 (1991); Bella, 24 F.3d at 1256 (only seizure itself, and not events leading to seizure, is scrutinized under Fourth Amendment ).

I review the facts favorably to the Plaintiff in order to determine whether his claim can be construed as one that can be addressed under the Fourteenth Amendment, and note that only Defendant Worth's conduct is relevant for purposes of this summary judgment motion.  Plaintiff states that when he arrived at the hospital where his injured nephew was taken, he found Officer Herrera restraining his sister, while other officers at the scene were attempting to calm down his brother-in-law.[5]  When Plaintiff observed Officer Herrera twisting his sister's arm, and heard his

---

the Fourteenth Amendment.  Taylor v. Meacham, 82 F.3d 1556 (10th Cir.1996) (Fourth Amendment governs unreasonable seizure and pretrial deprivations of liberty) (citing Albright, 510 U.S. 266).

[4]  Plaintiff's use of Latta to support his proposition is not only incorrect, but puzzling, since the case clearly involves police activity which was not connected with an arrest.  In Latta, the police were in pursuit of an intoxicated driver, and seizure had not yet occurred.

[5]  Plaintiff remembers his brother responding to the officers' requests to calm down with "No, I don't have to. My son's dying in there." Ex. 1, 103:8-13.

sister crying, Plaintiff told Herrera that he "didn't have to do that." Officer Rhoades reached to put a flashlight across Plaintiff's neck from behind and started choking him with it. Worth came up to assist Rhoades and another officer in grabbing Plaintiff's arms behind his back and handcuffing him. Ex. 1, 108-110. Plaintiff stated in his deposition that he did not resist being handcuffed, but was trying to get the flashlight off his throat. After Plaintiff was handcuffed, Rhoades threw him against the wall so that Plaintiff hit his left shoulder on the wall. Both Officers Rhoades and Worth escorted Plaintiff from the hospital, pushing him toward the patrol car, and making him "walk faster" than he wanted. Once outside the hospital doors, Rhoades and Worth "threw" Plaintiff down on the pavement, causing Plaintiff to sustain a knee scrape. Ex. 1, 112-113. Finally, when Plaintiff turned around as he was being placed in the car, Worth "punched" him in the mouth. Ex. 1, 117:10-12. On the way to the City of Hobbs police station, Worth called Plaintiff a "wimp" and a "pussy." At the jail, after being removed from the general population and put into a "detox" cell, Plaintiff's clothes were forcibly removed. Plaintiff identified Worth, Rhoades and Herrera as the officers who took him from the general population to detox, but was not sure which officers forcibly removed his clothing while he was in the detox cell. Ex. 1, 155-56.

My conclusion is that, based on Plaintiff's own description of events, Worth's conduct is confined to the context of the arrest, from the moment he approached Plaintiff to assist in the handcuffing, to the subsequent allegations of excessive force. Defendant Worth's conduct and alleged constitutional violations must be addressed exclusively under the Fourth Amendment. Therefore, Plaintiff's substantive due process claim under the Fourteenth Amendment in Count II shall be dismissed.

II.     Fourteenth Amendment - Equal Protection

Defendant also seeks dismissal of Plaintiff's Count III, alleging a violation of his Fourteenth Amendment Equal Protection rights.[6]

To establish an equal protection claim under § 1983, Plaintiff must show that he is a member of a protected class and that he was intentionally and purposefully discriminated against because of his membership in that protected class.  Jones v. Union County, Tenn., 296 F.3d 417, 426 (10th Cir. 2002) (citing Boger v. Wayne County, 950 F.2d 316, 325 (6th Cir.1991)).  The discriminatory purpose need not be the only purpose, but it must be a motivating factor in the decision.  Villanueva v. Carere, 85 F.3d 481, 485 (10th Cir.1996) (quoting Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265-66 (1977)).

Plaintiff presents no evidence at all that Worth's conduct during and after his arrest was racially motivated.  Plaintiff concedes that he had no prior incidents with Defendant Worth prior to October 16, 1998.  When asked why he believed Worth pushed him out of the hospital doors intentionally, Plaintiff replied, "Just to get me out that door, get me out of that room, I guess." Ex. 1 at 114.   At his deposition, Plaintiff said he believed he was arrested because he was Hispanic, but could not give a reason to support that belief other than to state

> "[b]ecause Rhoades and Worth probably had it set up.  You know, they talked, hey, let's get him. And even when I was in jail, my brother-in-law heard say [sic] they're going to get that Diaz boy."

Ex. B at 298.   These statements are useless to Plaintiff's equal protection claim, for several

_____

[6]  Plaintiff's claim of unreasonable seizure must be viewed as separate and distinct from any claim of racially discriminatory conduct.  See, Marshall v. Columbia Lea Regional Hosp., 345 F.3d 1157, 1166 (10th Cir. 2003) (Equal Protection Clause of the Fourteenth Amendment provides citizens a degree of protection independent of the Fourth Amendment protection against unreasonable searches and seizures) (citation omitted).

reasons.  First, Plaintiff admitted that he had no idea whether the officer who made that statement

was either Rhoades or Worth.  Second, hearsay testimony, which accurately describes Plaintiff's

recounting of his brother-in-law's statement, "is not suitable grist for the summary judgment mill."

Hardy v. S.F. Phosphates Ltd. Co., 185 F.3d 1076, 1079 (10th Cir. 1999).[7]  Nor has Plaintiff

thought to submit an affidavit by the declarant, further compounding the hearsay offense for

purposes of responding to the summary judgment motion.  Third, the only evidence Plaintiff offers

for his equal protection claim is the arrest itself, as though the arrest of a Hispanic individual

should speak for itself as being discriminatory.  Plaintiff solidly admits that he has no evidence that

he was arrested because he is Hispanic, because he "can't read their minds."  Ex. B, 299:4-20.

Unfortunately, neither can the Court.

The familar burden-shifting analysis used in Title VII claims applies equally to § 1983

claims of race discrimination in violation of the Equal Protection Clause.  English v. Colo. Dep't

of Corr., 248 F.3d 1002, 1007 (10th Cir.2001).  The ultimate burden of persuasion remains with

the Plaintiff.  See, Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

At the summary judgment stage, Plaintiff therefore has the burden of presenting a minimum

showing of evidence from which a fact finder could infer discriminatory motive.  See, e.g.,

Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999) (where Court found that

plaintiff survived summary judgment because she created a fact question that required further

exploration in the trial court to present or contest the explanations).  In response to Defendant's

Statement of Fact No. 7, where Defendant states that "Plaintiff possesses no evidence upon which

---

[7]  According to Plaintiff's deposition testimony, Henry Garcia said he had overheard an officer making the statement.  Thus, it seems that Henry Garcia, the man who struck the injured boy, is also Plaintiff's brother-in-law.  Ex. B, 298-299:17-25, 1-5.

to support his claim that his arrest . . . by Officer Worth was racially motivated[,]" Plaintiff merely states that he "will produce witnesses to the fact that the arrest was racially motivated." Response to Statements of Fact, No. 4.   Instead of presenting evidence minimally sufficient to establish the existence of an element essential to his case – discriminatory motive – Plaintiff and his counsel resort to a "check is in the mail approach" to evidence he expects the Court to take on faith is out there somewhere.  See, McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (where nonmoving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment).  In short, Plaintiff has not offered any dispute of material fact sufficient to rebut Defendant's statement that there is no evidence of racially motivated conduct by Defendant Worth.

Plaintiff's subjective belief that he was treated differently because of his ethnic background can not be considered evidence from which a jury could reasonably infer that Defendant Worth was motivated by a discriminatory purpose and that his actions had a discriminatory effect.  See, Palochko v. Manville Corp., 21 F.3d 981 (10th Cir. 1994) (plaintiffs' mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment) (citations omitted); Aramburu v. Boeing Co., 112 F.3d 1398, 1408 n.7 (10th Cir. 1997) (subjective belief of discrimination is not sufficient to preclude summary judgment) (citing cases).  Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's Fourteenth Amendment Equal Protection claim in Count III of the complaint.

**THEREFORE**,

**IT IS ORDERED** that Defendant Jeff Worth's Partial Summary Judgment on Counts II and III of the Complaint **(Doc. 108)** is hereby GRANTED, for reasons given above.  Plaintiff's claims of Fourteenth Amendment substantive due process and equal protection (Counts II and III of the Complaint) alleged against Defendant Worth, are DISMISSED WITH PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE